UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 0:18-cv-61213-WPD

**SHARONE GERSTENHABER,**
individually and on behalf of all
others similarly situated,

    Plaintiff,

v.

**MATHERNE HOLDINGS, INC.,**

    Defendants.
_____/

**CLASS ACTION**

**JURY TRIAL DEMANDED**

## AMENDED CLASS ACTION COMPLAINT

Plaintiffs' Sharone Gerstenhaber and Terri Carfagno (collectively referred to as "Plaintiffs") brings this class action against Defendants Matherne Holdings, Inc. ("Matherne Holdings") and Todd Matherne ("Matherne")(collectively referred to as "Defendants") and allege as follows upon personal knowledge as to themselves and their own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

## NATURE OF THE ACTION

1. This is a putative class action under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*, ("TCPA"), arising from Defendants' knowing and willful violations of the TCPA.

2. Matherne Holdings is an automobile insurance broker. It is headquartered in Lewes, Delaware.

3. On information and believe, Matherne is the president and sole director of Matherne Holdings and he is solely responsible for Matherne Holdings business operations.

1

4. Plaintiffs and Class Members have no relationship with Defendants, and never provided their telephone numbers to Defendants.

5. Nevertheless, Defendants embarked on an unsolicited telemarketing text message campaign, causing Plaintiffs and class members injuries, including invasion of their privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion.

6. Through this action, Plaintiffs seeks injunctive relief to halt Defendants' illegal conduct. Plaintiffs also seeks statutory damages on behalf of themselves and Class Members, as defined below, and any other available legal or equitable remedies resulting from the illegal actions of Defendants.

## JURISDICTION AND VENUE

7. Jurisdiction is proper under 28 U.S.C. § 1331 as Plaintiffs' allege violations of a federal statute. Jurisdiction is also proper under 28 U.S.C. § 1332(d)(2) because Plaintiffs' allege a national class, which will result in at least one Class member belonging to a different state than Defendants. Plaintiffs' seeks up to $1,500.00 in damages for each call in violation of the TCPA, which, when aggregated among a proposed class numbering in the tens of thousands, or more, exceeds the $5,000,000.00 threshold for federal court jurisdiction under the Class Action Fairness Act ("CAFA").

8. Venue is proper in the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. §§ 1391(b) and (c) because Defendants are deemed to reside in any judicial district in which it is subject to the court's personal jurisdiction, and because Defendants provide and market their services within this district thereby establishing sufficient contacts to subject it to personal jurisdiction. Further, Defendants' tortious conduct against Plaintiff Sharone Gerstenhaber occurred within this district and, on information and belief, Defendants have sent the same text message complained of by Plaintiff to other individuals within this judicial district, such that some of Defendants' acts have occurred within this district, subjecting Defendants to jurisdiction here.

## PARTIES

9. Plaintiff Sharone Gerstenhaber is a natural person who, at all times relevant to this action, was a resident of Broward County, Florida.

10. Plaintiff Terri Carfagno is a natural person who, at all times relevant to this action, was a resident of Sarasota County, Florida.

11. Matherne Holdings is a Delaware corporation with its principal office located at 354 Tulip Drive, Houma, Louisiana 70360. Matherne Holdings directs, markets, and provides business activities throughout the State of Florida.

12. Todd Matherne is a natural person who, at all times relevant to this action, was a resident of the State of Louisiana. Matherne is the president and sole director of Matherne Holdings and he is solely responsible for Matherne Holdings business operations.

13. On information and believe, Matherne approved, authorized and participated in the sending of text messages by: 1) purchasing leads from third parties; 2) initiating the sending of text messages via VOI; and 3) utilizing a third-party customer relationship manager. Additionally, Matherne keeps a file of leads that show interest for potential future messaging.

## THE TCPA

14. The TCPA prohibits: (1) any person from calling a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent. 47 U.S.C. § 227(b)(1)(A).

15. The TCPA defines an "automatic telephone dialing system" ("ATDS") as "equipment that has the capacity - (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

16. The TCPA exists to prevent communications like the ones described within this

Complaint.  *See Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

17.     In an action under the TCPA, a plaintiff must show only that the Defendants "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), *aff'd*, 755 F.3d 1265 (11th Cir. 2014).

18.     The Federal Communications Commission ("FCC") is empowered to issue rules and regulations implementing the TCPA.  According to the FCC's findings, calls in violation of the TCPA are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.  The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.

19.     In 2012, the FCC issued an order further restricting automated telemarketing calls, requiring "prior express written consent" for such calls to wireless numbers.  *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1838 ¶ 20 (Feb. 15, 2012) (emphasis supplied).

20.     To obtain express written consent for telemarketing calls, a Defendants must establish that it secured the plaintiff's signature in a form that gives the plaintiff a "'clear and conspicuous disclosure' of the consequences of providing the requested consent….and [the plaintiff] having received this information, agrees unambiguously to receive such calls at a telephone number the [plaintiff] designates." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1837 ¶ 18, 1838 ¶ 20, 1844 ¶ 33, 1857 ¶ 66, 1858 ¶ 71 (F.C.C. Feb. 15, 2012).

21.     The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or

4

investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(12). In determining whether a communication constitutes telemarketing, a court must evaluate the ultimate purpose of the communication. *See Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015).

22. "Neither the TCPA nor its implementing regulations 'require an explicit mention of a good, product, or service' where the implication of an improper purpose is 'clear from the context.'" *Id.* (citing *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012)).

23. "'Telemarketing' occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services." *Golan*, 788 F.3d at 820 (citing 47 C.F.R. § 64.1200(a)(2)(iii) & 47 C.F.R. § 64.1200(f)(12)); *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd at 14098 ¶ 141, 2003 WL 21517853, at *49).

24. The FCC has explained that calls motivated in part by the intent to sell property, goods, or services are considered telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶¶ 139-142 (2003). This is true whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services during the call *or in the future. Id*.

25. In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶ 136 (2003).

26. If a call is not deemed telemarketing, a Defendants must nevertheless demonstrate that it obtained the plaintiff's prior express consent. *See In the Matter of Rules and Regulaions Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent

"for non-telemarketing and non-advertising calls").

27.     Further, the FCC has issued rulings and clarified that consumers are entitled to the same consent-based protections for text messages as they are for calls to wireless numbers. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) ("The FCC has determined that a text message falls within the meaning of 'to make any call' in 47 U.S.C. § 227(b)(1)(A)").

28.     With respect to standing, as recently held by the United States Court of Appeals for the Ninth Circuit:

> Unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients. A plaintiff alleging a violation under the TCPA "need not allege any *additional* harm beyond the one Congress has identified."

*Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037 (9th Cir. 2017) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016)).

29.     Similarly, the United States Court of Appeals for the Second Circuit recently held that the receipt of a telemarketing or unsolicited call "demonstrates more than a bare violation and satisfies the concrete-injury requirement for standing." *Leyse v. Lifetime Entm't Servs., LLC*, Nos. 16-1133-cv, 16-1425-cv, 2017 U.S. App. LEXIS 2607 (2d Cir. Feb. 15, 2017) (citing *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 725 F.3d 65, 105 (2d Cir. 2013) ("The injury-in-fact necessary for standing need not be large; an identifiable trifle will suffice."); *Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 819-21 (8th Cir. 2015) (holding that receipt of two brief unsolicited robocalls as voicemail messages was sufficient to establish standing under TCPA); *Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1252 (11th Cir. 2015) (holding that injury under similar TCPA provision may be shown by one-minute occupation of fax machine)).

**FACTS**
*(Specific to Plaintiff Sharone Gerstenhaber)*

30. On numerous dates, including May 14, 2018, Defendants placed, or caused to be placed, an automated text message to Plaintiff Sharone Gerstenhaber's cellular telephone number ending in 1818 ("1818 Number"):



31. When Plaintiff Sharone Gerstenhaber clicked on the included hyperlink, it transferred her to the website www.ezautosaver.com ("Defendants' Website"). Defendants' Website promotes Defendants' services and states, "The Site is owned and operated by Matherne Holdings Inc.":



**FACTS**
(*Specific to Plaintiff Terri Carfagno*)

32. On or about April 27, 2018, Defendants placed, or caused to be placed, an automated text message to Plaintiff Terri Carfagno's cellular telephone number ending in 0087 ("0087 Number"):

8



33. The hyperlink within the text message received by Plaintiff Terri Carfagno also lead to Defendants' Website.

## GENERAL FACTS

34. Defendants embarked upon an intrusive telemarketing campaign to promote its car insurance services which included the use of text messages.

35. The text messages Defendants placed, or caused to be placed to Plaintiffs, constitute telemarketing/advertising because they promote Defendants' business, goods, and services.

36. The text messages originated from telephone number 629-772-7961 and 207-522-6928, numbers which, on information and belief, are owned and/or operated by Defendants.

37. The numbers used by Defendants (629-772-7961 and 207-522-6928) are known as a "long code," a standard 10-digit phone number that enabled Defendants to send SMS text messages en masse, while deceiving recipients into believing that the message was personalized and sent from a telephone number operated by an individual.

38. Long codes work as follows: Private companies known as SMS gateway providers have contractual arrangements with mobile carriers to transmit two-way SMS traffic. These SMS

9

gateway providers send and receive SMS traffic to and from the mobile phone networks' SMS centers, which are responsible for relaying those messages to the intended mobile phone. This allows for the transmission of a large number of SMS messages to and from a long code.

39. Plaintiff Sharone Gerstenhaber received the subject texts within this judicial district and, therefore, Defendants' violation of the TCPA occurred within this district.

40. Upon information and belief, Defendants caused similar texts to be placed to individuals residing within this judicial district.

41. At no point in time did either Plaintiff provide Defendants with their express consent to be contacted by telephone using an ATDS.

42. Plaintiff Sharone Gerstenhaber is the subscriber and sole user of the 1818 Number.

43. Plaintiff Terri Carfagno is the subscriber and sole user of the 0087 Number.

44. The impersonal and generic nature of Defendants' text messages, demonstrate that Defendants utilized an ATDS in transmitting the messages. *See Jenkins v. LL Atlanta, LLC*, No. 1:14-cv-2791-WSD, 2016 U.S. Dist. LEXIS 30051, at *11 (N.D. Ga. Mar. 9, 2016) ("These assertions, combined with the generic, impersonal nature of the text message advertisements and the use of a short code, support an inference that the text messages were sent using an ATDS.") (citing *Legg v. Voice Media Grp., Inc.*, 20 F. Supp. 3d 1370, 1354 (S.D. Fla. 2014) (plaintiff alleged facts sufficient to infer text messages were sent using ATDS; use of a short code and volume of mass messaging alleged would be impractical without use of an ATDS); *Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d 1165, 1171 (N.D. Cal. 2010) (finding it "plausible" that Defendants used an ATDS where messages were advertisements written in an impersonal manner and sent from short code); *Hickey v. Voxernet LLC*, 887 F. Supp. 2d 1125, 1130; *Robbins v. Coca-Cola Co.*, No. 13-CV-132-IEG NLS, 2013 U.S. Dist. LEXIS 72725, 2013 WL 2252646, at *3 (S.D. Cal. May 22, 2013) (observing that mass messaging would be impracticable

without use of an ATDS)).

45. To send the text messages, Defendants' used a messaging platform (the "Platform") that permitted Defendants to transmit thousands of automated text messages without any human involvement.

46. The Platform has the capacity to store telephone numbers, which capacity was in fact utilized by Defendants.

47. The Platform has the capacity to generate sequential numbers, which capacity was in fact utilized by Defendants.

48. The Platform has the capacity to dial numbers in sequential order, which capacity was in fact utilized by Defendants.

49. The Platform has the capacity to dial numbers from a list of numbers, which capacity was in fact utilized by Defendants.

50. The Platform has the capacity to dial numbers without human intervention, which capacity was in fact utilized by Defendants.

51. The Platform has the capacity to schedule the time and date for future transmission of text messages, which occurs without any human involvement.

52. Additionally, the Platform has an auto-reply function that results in the transmission of text messages to individual's cellular telephones automatically from the system, and with no human intervention, in response to a keyword (e.g. "8" or "cancel") being sent by a consumer.

53. To transmit the text messages at issue, Defendants uploaded a list of telephone numbers which are stored indefinitely by the Platform.

54. Defendants then created the content of the text messages, selected the telephone numbers to transmit the messages to, and selected a date and time for transmission.

11

55. In making these selections, Defendants was simply creating a set of instructions that were subsequently executed automatically (i.e. with no human intervention), by the Platform.

56. The Platform automatically executed Defendants' instructions as follows:

(1) The Platform retrieved each telephone number from the list of numbers uploaded by Defendants in the sequential order the numbers were listed by Defendants;

(2) The Platform then generated each number in the sequential order listed by Defendants and combined each number with the content of Defendants' message to create "packets" consisting of one telephone number and the message content;

(3) Each packet was then transmitted in the sequential order listed by Defendants to an SMS aggregator, which acts an intermediary between the Platform, mobile carriers (e.g. AT&T), and consumers.

(4) Upon receipt of each packet, the SMS aggregator transmitted each packet – automatically and with no human intervention – to the respective mobile carrier for the telephone number, again in the sequential order listed by Defendants. Each mobile carrier then sent the message to its customer's mobile telephone.

57. The above execution of Defendants' instructions occurred seamlessly, with no human intervention, and almost instantaneously. Indeed, the Platform is capable of transmitting thousands of text messages following the above steps in minutes, if not less.

58. Further, the Platform "throttles" the transmission of the text messages depending on feedback it receives from the mobile carrier networks. In other words, the platform controls how

quickly messages are transmitted depending on network congestion. The platform performs this throttling function automatically and does not allow a human to control the function.

59. The following graphic summarizes the above steps and demonstrates that the dialing of the text messages at issue was done by the Platform automatically and without any human intervention:



60. Defendants' unsolicited text messages caused Plaintiffs actual harm, including invasion of his privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion. Defendants' text message also inconvenienced Plaintiffs and caused disruption to their daily life.

## CLASS ALLEGATIONS

### PROPOSED CLASS

61. Plaintiffs' brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of themselves and all others similarly situated.

62. Plaintiffs' brings this case on behalf of the below defined Class:

> **All persons within the United States who, within the four years prior to the filing of this Complaint; were sent a text message; from Defendants or anyone on Defendants' behalf; to said person's cellular telephone number; using the same equipment, or type of equipment, used to text Plaintiffs' cellular telephone; without the recipient's prior express consent.**

63. Defendants and its employees or agents are excluded from the Class. Plaintiffs' do not know the number of members in the Class but believes the Class members number in the several

thousands, if not more.

**NUMEROSITY**

64.     Upon information and belief, Defendants has placed automated calls to cellular telephone numbers belonging to thousands of consumers throughout the United States without their prior express consent. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

65.     The exact number and identities of the Class members are unknown at this time and can be ascertained only through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendants' call records.

**COMMON QUESTIONS OF LAW AND FACT**

66.     There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the Class are:

>    (1) Whether Defendants made non-emergency calls to Plaintiffs and Class members' cellular telephones using an ATDS;
>
>    (2) Whether Defendants can meet their burden of showing that they obtained prior express written consent to make such calls;
>
>    (3) Whether Defendants' conduct was knowing and willful;
>
>    (4) Whether Defendants is liable for damages, and the amount of such damages; and
>
>    (5) Whether Defendants should be enjoined from such conduct in the future.

67.     The common questions in this case are capable of having common answers. If Plaintiffs' claim that Defendants routinely transmits text messages to telephone numbers assigned to cellular

telephone services is accurate, Plaintiffs and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

### TYPICALITY

68. Plaintiffs' claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

### PROTECTING THE INTERESTS OF THE CLASS MEMBERS

69. Plaintiffs are representatives who will fully and adequately assert and protect the interests of the Class and has retained competent counsel. Accordingly, Plaintiffs are adequate representatives and will fairly and adequately protect the interests of the Class.

### SUPERIORITY

70. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendants' wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

71. The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendants. For example, one court might enjoin Defendants from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

## COUNT I
### Violations of the TCPA, 47 U.S.C. § 227(b)
### (On Behalf of Plaintiffs and the Class)

72. Plaintiffs' re-allege and incorporate the foregoing allegations as if fully set forth herein.

73. It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system … to any telephone number assigned to a … cellular telephone service …." 47 U.S.C. § 227(b)(1)(A)(iii).

74. The TCPA defines an "automatic telephone dialing system" (hereinafter "ATDS") as "equipment which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." *Id*. at § 227(a)(1).

75. Defendants – or third parties directed by Defendants – used equipment having the capacity to store telephone numbers, using a random or sequential generator, and to dial such numbers and/or to dial numbers from a list automatically, without human intervention, to make non-emergency telephone calls to the cellular telephones of Plaintiffs and the other members of the Class.

76. These text messages were sent without regard to whether Defendants had first obtained express permission from the text messaged party to make such text messages. In fact, Defendants did not have prior express consent to text message the cell phones of Plaintiffs and the other members of the putative Class when its text messages were made.

77. Defendants violated § 227(b)(1)(A)(iii) of the TCPA by using an automatic telephone dialing system to make non-emergency telephone calls to the cell phones of Plaintiffs and the other members of the putative Class without their prior express consent.

78. As a result of Defendants' conduct and pursuant to § 227(b)(3) of the TCPA, Plaintiffs and the other members of the putative Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiffs and the class are also entitled to an injunction against future calls.

**WHEREFORE**, Plaintiffs Sharone Gerstenhaber and Terri Carfagno, on behalf of themselves and the other members of the Class, pray for the following relief against Defendants Matherne Holdings Inc. and Todd Matherne, jointly and severally, as follows:

a. A declaration that Defendants practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227;

b. A declaration that Defendants violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, were willful and knowing;

c. An injunction prohibiting Defendants from using an automatic telephone dialing system to call and text message telephone numbers assigned to cellular telephones without the prior express consent of the called party;

d. An award of actual, statutory damages, and/or trebled statutory damages; and

e. Such further and other relief the Court deems reasonable and just.

## **JURY DEMAND**

Plaintiffs and Class Members hereby demand a trial by jury.

Date: December 18, 2018.

Respectfully submitted,

**EISENBAND LAW, P.A.**

/s/ Michael Eisenband
Michael Eisenband
Florida Bar No. 94235
515 E. Las Olas Boulevard, Suite 120
Ft. Lauderdale, Florida 33301
Email:
MEisenband@Eisenbandlaw.com
Telephone: 954.533.4092

**HIRALDO P.A.**
Manuel S. Hiraldo, Esq.
Florida Bar No. 030380
401 E. Las Olas Boulevard
Suite 1400
Ft. Lauderdale, Florida 33301
Email: mhiraldo@hiraldolaw.com
Telephone: 954.400.4713

**IJH LAW**
Ignacio J. Hiraldo
Florida Bar No. 0056031
14 NE First Ave
10th Floor
Email: ijhiraldo@ijhlaw.com
Telephone: 786.351.8709

*Counsel for Plaintiff and the Class*
